

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-45,746-02

### EX PARTE DAVID WOOD, Applicant

## ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE NO. 58486-171-2 IN THE 171ST DISTRICT COURT EL PASO COUNTY

**ALCALA, J., filed a dissenting opinion.**

### DISSENTING OPINION

Unlike this Court's majority opinion that declines to reconsider the -02 habeas application filed by David Wood, applicant, I would instead reopen the application on our own motion and remand it to the habeas court for further proceedings. I conclude that applicant's intellectual disability claim that was rejected by this Court in 2014 must be reconsidered in light of the Supreme Court's recent decision in *Moore v. Texas*, 137 S. Ct. 1039 (2017). Because I would order the habeas court to address applicant's instant claim that the prior assessment of his intellectual disability failed to conform with the diagnostic

framework endorsed by the Supreme Court in *Moore*, I respectfully dissent.[1]  I explain my conclusion by reviewing applicant's arguments and why I find the majority opinion's analysis unpersuasive.

### I. Applicant's Arguments

Applicant asserts that he has significantly subaverage general intellectual functioning and adaptive deficits such that his execution would violate the Eighth and Fourteenth Amendments.  Applicant presented evidence at the 2011 *Atkins*[2] hearing before the convicting court showing that he had IQ scores of 64, 71, and 75, obtained from the administration of WAIS instruments.[3] These low IQ test results are consistent with his performance as a young student.  He failed the first, third, and ninth grades, he attended special education classes, and he eventually dropped out of school in the ninth grade at the age of seventeen, at which time he was three years behind his peers in school.  He could not read a clock or tell time, even as a teenager.  His fourth grade teacher testified that in her thirty-five years of teaching approximately 900 students, applicant was the sole person whom she had required to sit next to her desk because he needed her to personally explain things

---

[1]  It may be suggested that the facts of this offense are so extenuating and horrific that this Court should be permitted to ignore Supreme Court precedent to ensure that bad people are punished regardless of their possible intellectual disability. The determining factor for intellectual disability is not the type of crime or horrific nature of it. Rather, the issue is whether the defendant is intellectually disabled under the appropriate legal framework pursuant to current medical diagnostic criteria. The proper way to handle this case is to remand it to the habeas court so that the court that heard the facts can analyze it under the proper legal framework as set out by the Supreme Court.

[2]  *Atkins v. Virginia*, 536 U.S. 304 (2002).

[3]  Other testing placed applicant's IQ at 111, 101, and 67.

to him repeatedly. Applicant's problems in school included the absence of close friends and his association with children who were several years younger than him.

## II. Analysis

In declining to remand this claim to the habeas court for further consideration, this Court's majority opinion employs the same type of incorrect intellectual disability analysis that it has been conducting mistakenly for over a decade since issuing its opinion in *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004). The instant majority opinion continues to selectively focus on only the IQ scores and adaptive strengths that would support a determination that applicant is not intellectually disabled, despite current medical standards suggesting that this is an inappropriate approach to intellectual-disability determinations.

This Court's majority opinion cherry picks certain IQ scores and treats those scores as dispositive evidence of a lack of intellectual disability. This Court's majority opinion acknowledges that applicant's IQ scores range from 64 to 111, but it dismisses low IQ scores that would indicate subaverage general intellectual functioning as the product of malingering. It uncritically assumes the validity of applicant's higher IQ scores without addressing whether the methods used to obtain those scores would still comport with current medical diagnostic criteria. And perhaps more importantly, this Court's cherry-picked IQ score of 75 provides a worst-case scenario IQ score of 71 based on the "measurement error range." This score is only one point above the cutoff score that would place someone in the range of intellectually disability, when the low end of the IQ score error range is 70 or below. Under

the current medical diagnostic framework, it is inappropriate to decide that someone is not intellectually disabled by using a strict cutoff score taken from a cherry picked IQ test.

I agree with applicant that *Hall* recognized that an IQ score is imprecise and should not be read as a single, fixed, infallible number but rather as a range determined by a standard error of measurement. *See Hall v. Florida*, 572 U.S. 701, 712 (2014). I also agree that *Hall* instructed courts to consider the professional consensus of the medical community in evaluating intellectual disability and that the medical community would not find that applicant is not intellectually disabled merely because his low-end result on one IQ test placed him one point above the range for a diagnosis of intellectual disability. Rather, looking at the range of scores, I conclude that it is necessary to consider whether there is also evidence of adaptive deficits before it could be ultimately determined whether applicant is intellectually disabled. *Id*.

Furthermore, the habeas court's fact findings regarding adaptive deficits are inadequate even if this Court disregards those findings that directly discuss *Briseno*. This Court's majority opinion acknowledges that the habeas court's fact findings and conclusions took into account diagnostic standards that are no longer accepted by the medical community, as well as considered the non-medical *Briseno* factors that the Supreme Court expressly rejected in *Moore*. *See* 137 S. Ct. at 1051. The majority opinion suggests that there is enough information in the fact findings numbered one through 279 that it adopts in this case and that it suggests are not based on the *Briseno* factors. I respectfully disagree because,

despite the majority opinion's suggestion, these findings adopted by this Court's majority opinion improperly focus on applicant's adaptive strengths and his abilities in a controlled prison setting. For example, the habeas court found that someone with intellectual disability would not be able to "write coherent, correct sentences with decent punctuation," use sophisticated "words like 'specialist,'" or communicate lucid thoughts in written letters.[4] However, clinical experts have counseled against viewing the presence of adaptive strengths as evidence of the absence of adaptive weaknesses. Further, they caution against considering adaptive strengths arising in controlled settings like a prison. Additionally, the habeas court found that applicant's troubles in school could be due to factors other than intellectual disability, such as "dyslexia or trouble reading, a poor home life, or being held back a grade."[5] The Supreme Court in *Moore* expressly recognized that other mental or physical impairments are common comorbidities in intellectually disabled persons and are "not evidence that a person does not also have intellectual disability." *Moore*, 137 S. Ct. at 1051. Because the convicting court's fact findings and conclusions fail to comport with the current medical diagnostic framework, this Court's majority opinion should not adopt them, and it should instead remand this case for further evidentiary development and factual findings under the proper standard.

### III. Conclusion

---

[4]    Findings 62-66.

[5]    Findings 113-115.

Because the Court declines to remand this case to the convicting court for fact findings and conclusions of law that comport with the current medical diagnostic framework, I respectfully dissent.

Filed: December 12, 2018

Publish